711 N.W.2d 144 (2006)
2006 ND 47
In the Interest of F.F. and F.M., Minor Children.
L.J. Bernhardt, Petitioner and Appellee
v.
F.F., a child, F.M., a child, Respondents and Appellees
J.F., their mother, Respondent and Appellant
F.M., Sr., their father, the Executive Director of the North Dakota Department of Human Services, Respondents.
No. 20050210.
Supreme Court of North Dakota.
February 28, 2006.
Robert A. Keogh (argued) of Keogh Law Office, Dickinson, ND, for respondent and appellant, J.F.
Owen K. Mehrer (argued), Assistant State's Attorney, Dickinson, ND, for petitioner and appellee, L.J. Bernhardt.
Sandra K. Kuntz of Mackoff, Kellogg, Kirby & Kloster, P.C., Dickinson, ND, for respondents and appellees, F.F. and F.M.
MARING, Justice.
[¶ 1] J.F. ("Jane")[1] appeals from the juvenile court's findings of fact, conclusions of law, and order terminating parental rights to her two minor children, F.F. ("Fred") and F.M. ("Frieda"). The children's father, F.M. ("Frank"), whose parental *145 rights were also terminated, did not appeal. We affirm the juvenile court's order terminating parental rights.

I
[¶ 2] Jane was born in 1976. She has given birth to five children. She previously gave up custody of her three oldest children. This case involves only Jane's two youngest children, Fred and Frieda. Fred was born in the fall of 2000. Frieda was born in late 2002. Stark County Social Services ("Social Services") requested removal of both children from Jane's home and they were placed in foster care on April 25, 2003.
[¶ 3] Frank and Jane had lived together sporadically for seven years, but never married. At the time Fred and Frieda were removed from Jane's home, Frank and Jane had been separated for approximately three months. Jane testified at trial that she and Frank had a tumultuous relationship and that she had suffered abuse for four or five of the seven years they were together. Jane also testified that Fred had witnessed some of the physical abuse that had taken place and felt it may have led to aggressive behavior Fred exhibits.
[¶ 4] A petition alleging Fred and Frieda were deprived was filed following the children's removal from Jane's home in April 2003. Jane did not contest the allegations of deprivation and consented to Social Services' continued custody of the children. In March 2004, Social Services moved for an extension of its custody of the children. Jane again did not contest and Social Services' custody was extended for another year. At trial, Jane did contest some of the allegations made in prior proceedings.
[¶ 5] At the termination of parental rights trial, testimony was presented relating to Jane's relationship with her children, allegations of child abuse, and allegations of Jane's substance abuse. Testimony was also presented relating to Fred's aggressive behavior and use of obscene language. Expert testimony indicated Fred was suffering from post traumatic stress disorder and a possible reactive attachment disorder. Testimony also showed such a diagnosis is consistent with a child having been abused and neglected. The expert witness also testified as to her recommendation that Jane's visitation with the children be terminated based on the negative behaviors he observed in the children after Jane's visits. Testimony also indicated that Jane continues to involve herself in abusive relationships.
[¶ 6] Based on this evidence, the juvenile court found that, although Jane had shown some desire to improve her parenting skills, she had failed to make sufficient progress. The juvenile court noted that Jane's failure to follow through with required aftercare of one treatment program and failure to complete parenting skill classes evidenced the failure to make sufficient progress. The juvenile court found that clear and convincing evidence had been presented proving the children had been and presently were deprived. Further, Jane's prior history and prognostic evidence indicated that the causes of the deprivation will continue or not be remedied. The juvenile court also found that the children are suffering or will probably suffer serious harm absent a termination of parental rights. Additionally, the juvenile court found that the children had been in foster care for at least four hundred fifty out of the previous six hundred sixty nights. Accordingly, the juvenile court terminated Jane's parental rights.
[¶ 7] Jane appeals.

*146 II
[¶ 8] Under N.D.C.C. § 27-20-44(1)(b)(1), the juvenile court may terminate parental rights provided the State can establish by clear and convincing evidence: (1) the child is a deprived child; (2) the causes and conditions of that deprivation are likely to continue; and, (3) the child is suffering, or is likely in the future to suffer serious physical, mental, moral, or emotional harm. In the Interest of D.F.G., 1999 ND 216, ¶ 11, 602 N.W.2d 697 (citing N.D.C.C. § 27-20-44(1)(b)). Under N.D.C.C. § 27-20-44(1)(b)(2), the juvenile court may terminate parental rights if the child is deprived and in foster care or the control, care, and custody of the state for four hundred fifty out of the previous six hundred sixty nights. See In the Interest of D.F.G., 1999 ND 216, ¶ 15 n. 3, 602 N.W.2d 697.
[¶ 9] On review, this Court will not set aside the juvenile court's findings of fact unless they are clearly erroneous. N.D.R.Civ.P. 52(a). "A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) if there is no evidence to support it, if the reviewing court is left with a definite and firm conviction a mistake has been made, or if the finding is induced by an erroneous view of the law." In the Interest of T.T., 2004 ND 138, ¶ 5, 681 N.W.2d 779. Under N.D.R.Civ.P. 52(a) "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

A
[¶ 10] Jane argues the juvenile court erred in concluding it could order termination of parental rights under either paragraph (1) or (2) of N.D.C.C. § 27-20-44(1)(b). The relevant portions of N.D.C.C. § 27-20-44(1)(b) provide:
1. The court by order may terminate the parental rights of a parent with respect to the parent's child if:
. . .
b. The child is a deprived child and the court finds:
(1) The conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm;
(2) The child has been in foster care, in the care, custody, and control of the department, or a county social service board, or, in cases arising out of an adjudication by the juvenile court that a child is an unruly child, the division of juvenile services, for at least four hundred fifty out of the previous six hundred sixty nights; or ...
N.D.C.C. § 27-20-44. Jane states that the juvenile court cannot terminate parental rights under paragraph (2) based only on a finding of deprivation and "purely a mathematical calculation" that the child has been in foster care or the care of the state for the requisite period of time. Jane relies on In the Interest of K.S. and A.S. to support her argument that a termination based solely on the criteria of paragraph (2) is not allowed. See 2002 ND 164, 652 N.W.2d 341. In Interest of K.S. and A.S. we stated:
To terminate parental rights, the evidence must show that as a result of the continued deprivation the children are suffering or will in the future probably suffer physical, mental, moral, or emotional harm.
Id. at ¶ 25. Jane interprets this to mean a juvenile court must make the findings required in paragraph (1) before it can make findings under paragraph (2). According to Jane, a juvenile court could never base a termination of parental rights on paragraph *147 (2) without making the same findings required under paragraph (1). We disagree.
[¶ 11] In the Interest of K.S. and A.S. dealt with a petition for termination filed under N.D.C.C. § 27-20-44(1)(b)(1). Facts that would implicate paragraph (2) were not present. See id. at ¶¶ 4-5 (noting that the children were removed from the home on October 26, 2000, and the petition for termination of parental rights was filed July 26, 2001). The portion of In the Interest of K.S. and A.S. that Jane relies on is misplaced in an analysis conducted solely under paragraph (2).
[¶ 12] "Words in a statute are to be understood in their ordinary sense, that is the meaning an ordinary person could get from reading the section." State v. Velasquez, 1999 ND 217, ¶ 4, 602 N.W.2d 693; see N.D.C.C. § 1-02-02.
Under N.D.C.C. § 27-20-44(1)(b)(2) (1999), termination is proper where the child is a deprived child and "the child has been in foster care, in the care, custody, and control of the department, or a county social service board ... for at least four hundred fifty out of the previous six hundred sixty nights."
In the Interest of D.F.G., 1999 ND 216, ¶ 15 n. 3, 602 N.W.2d 697. A juvenile court may order a termination of parental rights based solely on such a finding.
[¶ 13] Jane also questioned why an "or" was deleted from the end of N.D.C.C. § 27-20-44(1)(b) by the 1999 Legislative Assembly. Jane intimated the removal of "or" indicates the legislature intended to require that the criteria of both paragraph (1) and (2) of subdivision (b) must be met before a termination under paragraph (2) may be made. As it existed before 1999, the relevant portions of N.D.C.C. § 27-20-44 provided:
1. The court by order may terminate the parental rights of a parent with respect to his child if:
a. The parent has abandoned the child;
b. The child is a deprived child and the court finds that the conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm; or
c. The written consent of the parent acknowledged before the court has been given.
In 1999, the legislature amended N.D.C.C. § 27-20-44 as follows:
27-20-44. Termination of parental rights.
1. The court by order may terminate the parental rights of a parent with respect to his the parent's child if:
a. The parent has abandoned the child;
b. The child is a deprived child and the court finds that the:

(1) The conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm; or
(2) The child has been in foster care, in the care, custody, and control of the department, or a county social service board, or, in cases arising out of an adjudication by the juvenile court that a child is an unruly child, the division of juvenile services, for at least four hundred fifty out of the previous six hundred sixty nights; or

*148 (3) A court of competent jurisdiction has convicted the child's parent of one of the following crimes, or of an offense under the laws of another jurisdiction which requires proof of substantially similar elements:

(a) A violation of section 12.1-16-01, 12.1-16-02, or 12.1-16-03 in which the victim is another child of the parent;
(b) Aiding, abetting, attempting, conspiring, or soliciting a violation of section 12.1-16-01, 12.1-16-02, or 12.1-06-03 in which the victim is a child of the parent; or
(c) A violation of section 12.1-17-02 in which the victim is a child of the parent and has suffered serious bodily injury; or
c. The written consent of the parent acknowledged before the court has been given.
1999 N.D. Sess. Laws ch. 282, § 9. In amending the statute, the legislature did not remove the "or" that connected subdivisions (a), (b), and (c). It expanded the elements of subdivision (b), creating three separate and distinct elements that, when coupled with a finding of deprivation, would allow for termination of parental rights. An "or" still connects subdivisions (a), (b), and (c). The legislature adheres to commonly accepted grammatical rules. See N.D.C.C. § 1-02-03; see also N.D.C.C. § 1-02-05. The word "or" is "used as a function word to indicate an alternative" and, in logic, is a "sentential connective that forms a complex sentence which is true when at least one of its constituent sentences is true." Merriam-Webster's Collegiate Dictionary 872 (11th ed. 2005). It introduces "any of the possibilities in a series, but usually [is] used only before the last." Webster's New World Dictionary of the American Language 999 (2nd ed. 1980).
[¶ 14] Section 27-20-44(1)(b)(2), N.D.C.C., is clear. Under that section, a court may terminate parental rights solely on a finding of (1) deprivation and (2) that "[t]he child has been in foster care, in the care, custody, and control of the department, or a county social service board, or, in cases arising out of an adjudication by the juvenile court that a child is an unruly child, the division of juvenile services, for at least four hundred fifty out of the previous six hundred sixty nights."
[¶ 15] In a great number of cases in which termination is proper under N.D.C.C. § 27-20-44(1)(b)(2), we suspect the petitioner would also be able to establish a case for termination under paragraph (1). See, e.g., In the Interest of T.J.L., 2004 ND 142, ¶¶ 9, 11, 682 N.W.2d 735; In the Interest of J.P., 2004 ND 25, ¶ 25, 674 N.W.2d 273. This does not mean, however, that a finding of termination under paragraph (2) alone is improper.
[¶ 16] Termination based on findings under paragraph (2) is not mandatory. Section 27-20-44, N.D.C.C., gives the juvenile court discretion, when the burden of proof has been met, to decide whether termination is appropriate under any provision of the statute. A court that finds the criteria for termination may instead make an order for disposition under N.D.C.C. § 27-20-30 if it is in the child's best interest. See N.D.C.C. § 27-20-44(2). However, the filing of a petition for termination is mandatory if the child has been in foster care or the custody of the state for at least four hundred fifty out of the previous six hundred sixty nights. See N.D.C.C. § 27-20-20.1(2)(a).
[¶ 17] Section 27-20-44, N.D.C.C., was amended and reenacted and N.D.C.C. § 27-20-20.1 was enacted in 1999 under *149 Senate Bill No. 2171. 1999 N.D. Sess. Laws ch. 282, §§ 9 and 10. The purpose of the bill was to implement the requirements of the federal Adoption and Safe Families Act of 1997. The Adoption and Safe Families Act requires:
[I]n the case of a child who has been in foster care under the responsibility of the State for 15 of the most recent 22 months, or, if a court of competent jurisdiction has determined a child to be an abandoned infant (as defined under State law) .... the State shall file a petition to terminate the parental rights of the child's parents (or, if such a petition has been filed by another party, seek to be joined as a party to the petition), and, concurrently, to identify, recruit, process, and approve a qualified family for an adoption....
42 U.S.C. 675(5)(E). "This is not a requirement that states terminate parental rights in these circumstances, but states must initiate termination proceedings by filing a petition." Bill Analysis of P.L. 105-89, Adoption and Safe Families Act of 1997, National Conference of State Legislatures, p. 5. (December 8, 1997).
[¶ 18] We reject Jane's argument that a juvenile court cannot terminate parental rights under either N.D.C.C. § 27-20-44(1)(b)(1) or (2). Findings under either paragraph (1) or (2) of N.D.C.C. § 27-20-44(1)(b) are sufficient to support termination. Here, the juvenile court found termination was appropriate under either paragraph. We agree. In doing so, we also reject Jane's argument there is insufficient evidence to support the juvenile court's findings that her children have been and are presently deprived; the conditions of deprivation are likely to continue or will not be remedied; and, due to that deprivation, the children are suffering or will probably suffer serious physical, mental, emotional, or moral harm.

B
[¶ 19] Jane also argues the juvenile court erred when it adopted by reference matters of fact set forth in an earlier memorandum opinion, the juvenile court's conclusions of law were not supported by its findings of fact, and the juvenile court's order was not supported by its conclusions of law. We do not agree.

III
[¶ 20] Because the juvenile court did not err in its statutory interpretation and clear and convincing evidence exists to support its order terminating parental rights, we affirm.
[¶ 21] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., and BENNY A. GRAFF, Surrogate Judge, concur.
[¶ 22] The Honorable BENNY A. GRAFF, Surrogate Judge, sitting in place of SANDSTROM, J., disqualified.
NOTES
[1] The names of the parties are pseudonyms.