Filed 9/15/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 189

In the Interest of A.L., a minor child 

State of North Dakota, Petitioner and Appellee

v.

R.G., Father, Respondent and Appellant

No. 20110174

In the Interest of A.G., a minor child 

State of North Dakota, Petitioner and Appellee

v.

R.G., Father, Respondent and Appellant

No. 20110175

In the Interest of R.G., a minor child 

State of North Dakota, Petitioner and Appellee

v.

R.G., Father, Respondent and Appellant

No. 20110176

In the Interest of Ad.L., a minor child 

State of North Dakota, Petitioner and Appellee

v.

R.G., Father, Respondent and Appellant

No. 20110177

Appeal from the Juvenile Court of Benson County, Northeast Judicial District, the Honorable Lee A. Chirstofferson, Judge.

AFFIRMED.

Opinion of the Court by Kapsner, Justice.

James Peter Wang, State’s Attorney, P.O. Box 211, Minnewaukan, N.D. 58351-0211, for petitioner and appellee.

Mark Taylor Blumer, P.O. Box 7340, Fargo, N.D. 58106, for respondent and appellant.

Interest of A.L., A.G., R.G., Ad.L.

Nos. 20110174-20110177

Kapsner, Justice.

[¶1] 
R.G. appeals from a juvenile court order confirming a judicial referee’s decision to terminate his parental rights to four minor children.  We affirm, concluding the court did not clearly err in finding the children are deprived and have been in the custody of social services for 450 out of the previous 660 nights and did not abuse its discretion in terminating R.G.’s parental rights.

I

[¶2] In 2003, R.G. was placed on criminal probation, and in March 2009, his probation was revoked and he was sentenced to a three-year prison term.  In September 2009, R.G.’s four children involved in this action were all less than four years old and were residing with their mother when the children were taken into protective custody by Benson County Social Services and placed in foster care after the mother left the children with relatives and did not return for the children.  The record reflects the mother did not return for the children because she had been jailed on a criminal charge.

[¶3] In May 2010, the State petitioned to terminate the parental rights of R.G. and the mother.  In August 2010, the juvenile court terminated the mother’s parental rights and also found the children were deprived as to R.G., but the evidence was not sufficient to terminate his parental rights.  The juvenile court stated R.G. was anticipating being paroled in January 2011 with release to a halfway house for three to four months.  The court also stated R.G.’s early release was contingent upon his completion of a drug and alcohol treatment program.

[¶4] In December 2010, the State filed another petition to terminate R.G.’s parental rights, alleging the children had been in the custody of social services and foster care since September 2009.  An affidavit in support of the petition stated that the children had been in the custody of Benson County Social Services for fifteen out of the last twenty-two months, that R.G. had “problems following the rules” in prison, that he had been “kicked out” of the treatment program because of his conduct, that he did not know if he would be allowed back in the treatment program, that his “good behavior release date” was July 2012, and that the children deserved a stable environment, which could be accomplished by adoption.

[¶5] After a hearing, a judicial referee terminated R.G.’s parental rights to the four children, finding R.G. was not granted his early parole as anticipated because he had not yet completed his drug and alcohol treatment program due to his conduct in the prison facility.  The referee said R.G.’s release had been delayed at least six months from what was expected in August 2010, which would result in the children being in foster care for more than 450 out of the previous 660 nights under N.D.C.C. § 27-20-

44(1)(c)(2).  The referee further explained there were several other “unknowns” about when R.G. could be reunited with his children, including whether he will complete the treatment program, and there were no compelling reasons to delay permanency for the children.  The referee found sufficient evidence that the children would suffer harm by continuing them in foster care.  The referee found:

[S]ince the children are not placed in the home of a relative that has been approved by the department [NDCC 27-20-20.1(3)(a)], the combination of finding of deprivation along with a finding that the children have been in an out of home placement for “four hundred fifty out of the previous six hundred sixty nights” is a sufficient basis for the termination of parental rights in a case.  [NDCC 27-20-44(1)(c)(2)].

The juvenile court confirmed the referee’s decision.

II

[¶6] We will not set aside a juvenile court’s findings of fact in a termination proceeding unless the findings are clearly erroneous under N.D.R.Civ.P. 52(a).  
In re F.F.
, 2006 ND 47, ¶ 9, 711 N.W.2d 144.  “A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) if there is no evidence to support it, if the reviewing court is left with a definite and firm conviction a mistake has been made, or if the finding is induced by an erroneous view of the law.”  
In re T.T.
, 2004 ND 138, ¶ 5, 681 N.W.2d 779.  Under N.D.R.Civ.P. 52(a)(6), “the reviewing court must give due regard to the trial court’s opportunity to judge the witnesses’ credibility.”

[¶7] R.G. argues the juvenile court erred in terminating his parental rights.  The State responds the juvenile court did not err in terminating R.G.’s parental rights, because there was evidence to support the court’s finding the children were deprived and had been in foster care for 450 of the previous 660 nights under N.D.C.C. § 27-

20-44(1)(c)(2).

[¶8] Section 27-20-44(1), N.D.C.C., authorizes a juvenile court to terminate parental rights and provides, in part:

1. The court by order may terminate the parental rights of a parent with respect to the parent’s child if:

. . . .

c. The child is a deprived child and the court finds:

(1) The conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm; or

(2) The child has been in foster care, in the care, custody, and control of the department, or a county social service board, or, in cases arising out of an adjudication by the juvenile court that a child is an unruly child, the division of juvenile services, for at least four hundred fifty out of the previous six hundred sixty nights . . . .

The State must establish all the elements for termination by clear and convincing evidence.  
See
 
In re K.B.
, 2011 ND 152, ¶ 7, 801 N.W.2d 416.

[¶9] The provisions now codified in N.D.C.C. § 27-20-44(1)(c)(2) were enacted in 1999.  1999 N.D. Sess. Laws ch. 282, § 9.  The provisions were enacted to implement the requirements of the federal Adoption and Safe Families Act of 1997, 
see
 
F.F.
, 2006 ND 47, ¶ 17, 711 N.W.2d 144, and to provide stability for children by avoiding long-term foster care placements.  
Hearing on S.B. 2171 Before Senate Human Services Comm.
, 56th N.D. Legis. Sess. (Jan. 25, 1999) (written testimony of Blaine Nordwall, representative of North Dakota Department of Human Services).  In 
F.F.
, at ¶ 14 (emphasis added), we explained the provision now codified in N.D.C.C. § 27-

20-44(1)(c)(2) is clear and provides that a juvenile court:

may terminate parental rights 
solely
 on a finding of (1) deprivation and (2) that “[t]he child has been in foster care, in the care, custody, and control of the department, or a county social service board, or, in cases arising out of an adjudication by the juvenile court that a child is an unruly child, the division of juvenile services, for at least four hundred fifty out of the previous six hundred sixty nights.”

See also
 
In re L.J.
, 2007 ND 74, ¶ 2, 734 N.W.2d 342 (summarily affirming termination of parental rights under provision now codified in N.D.C.C. § 27-20-

44(1)(c)(2)).

[¶10] In 
F.F.
, 2006 ND 47, ¶ 16, 711 N.W.2d 144, we said the filing of a petition for termination is mandatory under N.D.C.C. § 27-20-20.1(2)(a) if a child has been in foster care or custody of the State for more than 450 out of the previous 660 nights, but termination under the language now codified in N.D.C.C. § 27-20-44(1)(c)(2) is not mandatory and “gives the juvenile court discretion, when the burden of proof has been met, to decide whether termination is appropriate under any provision of the statute.  A court that finds the criteria for termination may instead make an order for disposition under N.D.C.C. § 27-20-30 if it is in the child’s best interest.”  We recognized the purpose of the language in N.D.C.C. § 27-20-44(1)(c)(2) was to implement the requirements of the federal Adoption and Safe Families Act of 1997, and it was not required that a State terminate parental rights based on a mathematical calculation of a child’s time in foster care, but the State must initiate termination proceedings in that situation.  
F.F.
, at ¶ 17.  Under 
F.F.
 and N.D.C.C. § 27-20-

44(1)(c)(2), a juvenile court has discretion to terminate parental rights if the court finds the child is deprived and has been in the custody of social services for 450 out of the previous 660 nights.

[¶11] R.G. concedes there is evidence to support the juvenile court’s findings about deprivation and the length of time the children have been in the custody of social services.  We agree there is evidence in this record to support factual findings that R.G.’s parental rights were terminated under the criteria in N.D.C.C. § 27-20-

44(1)(c)(2), and the juvenile court’s findings on those factual issues are not clearly erroneous.

[¶12] R.G. nevertheless argues “[n]o constructive purpose would be served by terminating [his] parental rights at this time.”  There is evidence in this record that the State has attempted to keep R.G. involved with his children through visits at the prison facility.  However, given the age of these children, the length of time the children have already been in the custody of social services, the evidence of R.G.’s voluntary conduct that resulted in the extension of his time in prison, the uncertainty about his release from prison and reunification with the children, and the court’s finding about the probability of harm from the lack of permanency and continuation in foster care, we cannot say the juvenile court’s decision to terminate his parental rights was arbitrary, unreasonable, or capricious, or a misinterpretation or misapplication of the law.  
See
 
In re D.C.S.H.C.
, 2007 ND 102, ¶ 6, 733 N.W.2d 902 (juvenile court abuses its discretion when it acts in arbitrary, unreasonable, or capricious manner, or misinterprets or misapplies the law).  We therefore conclude the court did not abuse its discretion in terminating R.G.’s parental rights.

III

[¶13] We affirm the juvenile court order.

[¶14] Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.