2007 ND 83

**In the Interest of A.S. and N.S., Minor Children.**

**Libby Wynne, Petitioner and Appellee**

v.

**A.S., child, N.S., child, I.S., mother, and R.S., father, Respondents.**

**I.S., mother, Respondent and Appellant.**

No. 20060256.

Supreme Court of North Dakota.

June 7, 2007.

Frederick R. Fremgen, State's Attorney, Jamestown, N.D., for petitioner and appellee.

Thomas E. Merrick, Merrick & Schaar Law Firm, Jamestown, N.D., for respondent and appellant.

MARING, Justice.

[¶ 1]   I.S. ("Irene")[1] appeals the juvenile court's judgment terminating her parental rights.  We conclude the juvenile court did not abuse its discretion in denying Irene's motion for continuance, and it did not err in terminating Irene's parental rights.  We affirm the juvenile court's judgment terminating Irene's parental rights.

I

[¶ 2]   Irene, the mother, and R.S. ("Randall"), the father, have two children, A.S. ("Andrew"), a nine-year-old boy, and N.S. ("Nadine"), an eight-year-old girl. Reports of problems in the household began in 1999 when Stutsman County Social Services ("Social Services") received a report about a domestic assault in which the children were involved.  Social Services recommended the parents participate in domestic violence services, psychological evaluations, parenting classes, and case management.  Irene and Randall did not participate in these services.  On December 27, 1999, the police reported to Social Services that the home was dirty and the children were locked in their rooms.  The children were placed in Social Services' custody from December 28, 1999, to June 28, 2000.  Over the next several years, Social Services received numerous reports about Irene and her children, including: Nadine was hit on the head with a door during an altercation between Irene and Randall;  Irene intentionally cut herself in front of Andrew;  Irene kicked Randall and the children out of the house;  and Nadine went to school without socks or gloves on a cold day and had not eaten dinner the previous two days.  Services such as psychological evaluations and parenting classes had been recommended to or required of Irene numerous times since 1999.  She did not participate in these services.

[¶ 3]   On February 28, 2006, after a deprivation hearing, the juvenile court, in its findings of fact and order for disposition, found Andrew and Nadine were deprived children.  The juvenile court also found Social Services had made reasonable efforts to prevent removal of the children from their home.  The juvenile court ordered the children be removed from the care, custody, and control of their parents, and placed under the care, custody, and control of Social Services until August 23, 2006.  The juvenile court ordered Social Services to make every reasonable effort to return the children to their parents. The juvenile court ordered Irene to participate in psychological and parenting capacity evaluations, and to follow through with the recommended treatment, submit to

urinalyses, work with a parent aide, and attend parenting classes. Irene did not comply with the juvenile court's order. On March 1, 2006, Irene arranged visitation with the children. On March 5, 2006, Irene told her social worker, Libby Wynne, that Wynne could keep the children or give them to Randall. On March 6, 2006, Irene told Wynne she would sign over her parental rights to the children. On March 15, 2006, Irene told Wynne she wanted to terminate her parental rights. On May 3, 2006, Wynne filed a petition for termination of parental rights.

[¶ 4] A termination of parental rights hearing was scheduled for May 31, 2006. In the May 3, 2006, summons, Irene was informed that if she intended to have legal counsel she had to file an application for court-appointed counsel within two weeks of service of the summons. Irene appeared at the hearing without a lawyer. The juvenile court continued the hearing until August 18, 2006, after Irene requested court-appointed counsel. Irene submitted an application for court-appointed counsel on June 13, 2006, and received court-appointed counsel on June 14, 2006. On June 26, 2006, a notice to appear on August 18, 2006, was filed. On July 12, 2006, Irene was served with the notice to appear. On July 17, 2006, the juvenile court ordered that Andrew and Nadine remain in the care, custody, and control of Social Services until August 23, 2007.

[¶ 5] On July 27, 2006, Irene moved for an order continuing the August 18, 2006, hearing for at least ninety days because she did not wish to have her parental rights terminated; she was willing to take psychological and parenting capacity evaluations; she wished to reestablish contact with her children; and she wanted to reunite with her children. Irene participated in psychological and parenting capacity evaluations on August 11, 2006. On Au-

gust 17, 2006, the juvenile court denied Irene's motion for continuance. The hearing took place on August 18, 2006. At the hearing, Irene orally moved for continuance, informing the juvenile court of her completion of the psychological and parenting capacity evaluations. The results of those evaluations had not been completed at the time of the hearing. The juvenile court denied the motion. On September 20, 2006, the trial court entered a judgment terminating Irene's parental rights.

II

▬▬ [¶ 6] Irene argues the juvenile court abused its discretion in denying her motion for continuance. The juvenile court's decision to grant or deny a motion for continuance will not be reversed on appeal unless there was an abuse of discretion. *State v. Kunkel*, 452 N.W.2d 337, 339 (N.D.1990). There is an abuse of discretion when the juvenile court acts unreasonably, arbitrarily, or unconscionably. *Id.* This Court looks to the particular facts and circumstances of each case when reviewing the juvenile court's decision on a motion for continuance because there is not a mechanical test to determine whether the juvenile court abused its discretion. *Id.*

[¶ 7] In its order denying Irene's motion for continuance, the juvenile court found: "The hearing in this matter was originally scheduled to be heard on May 31, 2006, and was continued at that time at the request of [Irene]. The motion for a further continuance is denied, and the hearing will take place as scheduled on August 18, 2006." At the August 18, 2006, hearing, the juvenile court said:

[Irene's counsel] mentioned the evaluation wasn't completed, I was concerned but that might have been something that was not the fault of [Irene], whether or not it is or is not I don't know at this

point, but I note as I indicated it was ordered back at the end of February so there's been several months that have gone by, that's certainly something that can be raised through testimony. . . .

[¶ 8] We conclude the juvenile court did not abuse its discretion in denying Irene's motion for continuance. Her motion for continuance was based on the unavailability of the psychological and parenting capacity evaluation results. Irene had from February 28, 2006, to July 27, 2006,—the date she moved for continuance—to comply with the juvenile court's order requiring her to participate in psychological and parenting capacity evaluations, to submit to urinalyses, to work with a parent aide, and to attend parenting classes. Irene failed to comply with any part of the juvenile court's order until August 11, 2006, one week before the hearing, when she participated in the psychological and parenting capacity evaluations. The hearing had already been rescheduled once from May 31, 2006. Irene had five months to comply with the juvenile court's order and, for more than five months, Irene failed to participate in the psychological and parenting capacity evaluations. Delaying the hearing an additional ninety days would have kept Andrew and Nadine in a prolonged state of uncertainty. Services were recommended to or required of Irene as early as 1999, but she failed to utilize them. Considering the particular facts and circumstances of this case, the juvenile court did not abuse its discretion in denying Irene's motion for continuance.

## III

[¶ 9] Irene argues the juvenile court clearly erred in terminating her parental rights by finding the conditions and causes of her deprivation of her children were likely to continue. Irene also argues reasonable efforts were not made to reunite her with her children.

[¶ 10] To terminate a parent's rights, N.D.C.C. § 27–20–44(1)(b) requires a petitioner to prove by clear and convincing evidence that: (1) The children are deprived, (2) "The conditions and causes of the deprivation are likely to continue or will not be remedied," and (3) Because of the deprivation, the children are suffering or probably will suffer serious mental, emotional, physical, or moral harm. *Interest of M.B.*, 2006 ND 19, ¶ 13, 709 N.W.2d 11. "Clear and convincing evidence means evidence that leads to a firm belief or conviction the allegations are true." *Interest of D.M.*, 2007 ND 62, ¶ 7, 730 N.W.2d 604.

[¶ 11] The juvenile court's decision to terminate parental rights is a question of fact that this Court does not overturn unless the decision is clearly erroneous. *Interest of D.M.*, 2007 ND 62, ¶ 6, 730 N.W.2d 604. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made." *Id.* Due regard is given to the juvenile court's opportunity to judge a witness's credibility. *Interest of B.J.K.*, 2005 ND 138, ¶ 10, 701 N.W.2d 924.

### A

[¶ 12] To terminate a parent's rights, the children must first be deprived. N.D.C.C. § 27–20–44(1)(b). The juvenile court, in its September 20, 2006, findings of fact and order terminating parental rights, stated that in March 2000, and again in February 2006, it had found the children to be deprived, and had ordered removal and placement of the children with Social Services. Irene does not dispute that the children are deprived.

## B

█ [¶ 13] Once the children are determined to be deprived, the juvenile court must find the deprivation is "likely to continue or will not be remedied." N.D.C.C. § 27–20–44(1)(b)(1). Irene argues the juvenile court erred in finding clear and convincing evidence that the conditions and causes of her deprivation of her children were likely to continue.

[¶ 14] Irene contends reasonable efforts were not made to reunite her with her children. Reasonable efforts to preserve and reunite families must be made before "the placement of a child in foster care, to prevent or eliminate the need for removing the child from the child's home[,] and [t]o make it possible for a child to return safely to the child's home." N.D.C.C. § 27–20–32.2(2). Under N.D.C.C. § 27–20–32.2(1), "reasonable efforts" is defined as:

[T]he exercise of due diligence, by the agency granted authority over the child . . . to use appropriate and available services to meet the needs of the child and the child's family in order to prevent removal of the child from the child's family or, after removal, to use appropriate and available services to eliminate the need for removal and to reunite the child and the child's family. In determining reasonable efforts to be made with respect to a child . . ., and in making reasonable efforts, the child's health and safety must be the paramount concern.

[¶ 15] In its February 28, 2006, findings of fact, the juvenile court found:

[Social Services] has made reasonable efforts to help prevent removal. Case management and Parent Aide Services were offered to [Irene], and she refused these services. [Irene] agreed to attend counseling at SCHSC, but has not attended since December 1, 2005. [Irene]

agreed to ensure that [Andrew] attend therapy as recommended by his therapist, [Andrew] has not attended any therapy sessions since December 7, 2005.

The juvenile court ordered Social Services to "make every reasonable effort to return the children to their parental home" and ordered Irene and Randall to "participate in psychological and parenting capacity evaluations and follow through with recommended treatment" and ordered Irene to "submit to random urine analysis, work with parent aide, and attend parenting classes." In its September 20, 2006, findings of fact and order terminating Irene's parental rights, the juvenile court found Irene "did not submit to random urine testing nor did she take part in the nurturing classes" as ordered on February 28, 2006.

[¶ 16] There is evidence in the record that Social Services made reasonable efforts to reunite Irene with her children. The evidence shows Social Services attempted to have Irene submit to urinalyses, but Irene refused. The record indicates Irene repeatedly refused to participate in psychological and parenting capacity evaluations. The record also indicates Irene again refused services after Wynne told Irene her refusal to participate in court-ordered services could have an impact on the length of time her children were in foster care and could impede the reunification process. According to Wynne's testimony, Wynne sent Irene letters on April 11, 2006, and June 8, 2006. Wynne's testimony indicates that in both letters, Wynne offered Irene visitation or telephone contact with her children, but Irene did not respond to either letter. Wynne testified that she made several telephone calls to Irene to establish visitation. According to Wynne,

Irene only called to say she did not want the children and was willing to surrender her parental rights.

[¶ 17] The record supports that Social Services clearly exercised due diligence in attempting to reunite Irene with her children. Wynne's testimony establishes that Social Services repeatedly attempted to set up the court-ordered services and attempted to establish visitation or telephone contact with the children. The record indicates Irene not only ignored these attempts, but, until her motion for continuance on July 27, 2006, actually insisted that her parental rights be terminated. This Court rejects Irene's claim that reasonable efforts were not made to reunite her with her children.

[¶ 18] A lack of parental cooperation is relevant to the determination of whether deprivation will continue. *Interest of L.F.*, 1998 ND 129, ¶ 17, 580 N.W.2d 573. "Evidence of the parent's background, including previous incidents of abuse and deprivation, may be considered in determining whether deprivation is likely to continue. Evidence of past or present deprivation, however, is not alone sufficient to terminate parental rights, rather there must be prognostic evidence." *Id.* at ¶ 16 (citations omitted).

[¶ 19] Prognostic evidence is defined as that which "forms the basis for a reasonable prediction as to future behavior." *Id.* "Prognostic evidence must demonstrate the parent is presently unable to provide physical and emotional care for the child, with the aid of available social agencies if necessary." *Id.* at ¶ 17. Prognostic evidence must also demonstrate the parent's "inability to care for the child would continue for sufficient time to render improbable the successful assimilation of the child into a family if that parent's rights were not presently terminated." *Id.* "Prognostic evidence includes the reports and opinions of the professionals involved." *Interest of D.F.G.*, 1999 ND 216, ¶ 20, 602 N.W.2d 697. The amount of contact a parent has had with a child may also be considered. *Id.*

[¶ 20] In *Interest of B.J.K.*, 2005 ND 138, ¶ 17, 701 N.W.2d 924, this Court held the juvenile court was not clearly erroneous when it found the child was deprived, and the father's decision to continue living with the child's mother and his inability to complete the requirements established by social services were prognostic evidence that the deprivation would continue. In *Interest of A.L.*, 2001 ND 59, ¶ 16, 623 N.W.2d 418, the parents had been offered social services for nearly ten years but had refused to change their behavior to prevent the deprivation of their children. This Court concluded a pattern of parental conduct can form a basis for a reasonable prediction of future behavior. *Id.*

[¶ 21] In the present case, the juvenile court found that from December 1999 to April 2000, the children were placed in foster care because Irene had threatened to harm them if they remained in her care; on several prior occasions, Irene left her children in the care of others for weeks or months; from February 23, 2006, when her children were removed, Irene only had one planned visit with the children, on March 1, 2006; during the planned visit, Irene told Andrew it was his fault the children were removed; after the planned visit, Irene conveyed to her social worker and the juvenile court supervisor that she did not want any more contact with her children, and that Social Services could keep her children or give them to their father; besides the planned visit, Irene only had one accidental meeting with the children on June 3, 2006; from June 3, 2006 to August 18, 2006, Irene never sought to visit with her children and never

called them; Irene did not submit to urinalyses and did not partake in nurturing classes; Irene participated in the psychological and parenting capacity evaluations five months after the juvenile court's order; and Irene testified that she is not able to currently care for her children because she does not have her own residence and has trouble finding a residence because of her rental history.

[¶ 22] The evidence presented in the record supports the juvenile court's findings. The record indicates Irene's involvement, and unwillingness to cooperate, with Social Services goes back nearly eight years. The record shows that before the deprivation finding in 2006, there was a deprivation finding in 2000. According to testimony, Irene has repeatedly failed to engage in treatment and failed to complete parenting classes. Irene's lack of cooperation with Social Services and her refusal to change her behavior until the eve of the hearing are both strong and reasonable predictors deprivation will likely continue in the future.

[¶ 23] Irene now attempts to take steps necessary to improve her life. "[B]ut when the mental and physical health of a child are the concerns, it is not enough that a mother indicate a desire to improve. A parent must be able to demonstrate present capability, or capability within the near future, to be an adequate parent." *Interest of D.M.*, 2007 ND 62, ¶ 22, 730 N.W.2d 604. Irene testified she would not be able to have her children live with her because she does not have a residence of her own and has difficulty obtaining housing because of her rental history. Irene also testified she cannot currently fully care for her children because a lack of reliable transportation— her vehicle cannot be driven more than 45 miles per hour—requires her to leave for work with her supervisor at 4:30 a.m. and

return home at 6:00 p.m. or 7:00 p.m. Irene herself indicates she cannot currently care for her children and that the situation is not likely to change soon. Due to her inability to provide stable housing and transportation for her children, Irene is currently incapable of caring for her children and will not become capable within the near future.

[¶ 24] Although professional reports and opinions can provide prognostic evidence to support a finding that the conditions and causes of deprivation are likely to continue, this Court has never said they are necessary to satisfy the requirement of prognostic evidence. Professional reports and opinions merely are prognostic evidence. *See Interest of D.F.G.*, 1999 ND 216, ¶ 20, 602 N.W.2d 697. Prognostic evidence is any evidence that is a reasonable predictor of future behavior. *Interest of L.F.*, 1998 ND 129, ¶ 16, 580 N.W.2d 573. Although a lack of parental cooperation alone is insufficient to establish deprivation, it is pertinent to whether deprivation will continue. *Interest of D.F.G.*, 1999 ND 216, ¶ 21, 602 N.W.2d 697, relying on *Interest of R.M.B.*, 402 N.W.2d 912, 918 (N.D.1987). Nearly eight years of a lack of parental cooperation, together with the refusal to change behavior, represent an established pattern of behavior that reasonably predicts Irene's future behavior. Just as a continued failure to follow through with social services programs was prognostic evidence in *Interest of B.J.K.*, 2005 ND 138, ¶ 17, 701 N.W.2d 924, so too is Irene's repeated failure to comply with court-ordered treatment or to utilize the many services offered to her by Social Services. "When there has been an extensive period in which efforts have been made to overcome a parent's inabilities to effectively parent, the courts cannot allow the children to remain in this indeterminate status midway between foster care

and the obvious need for permanent placement." *Id.* at ¶ 16. A child's living situation should not continue to linger in the hope that the mother will finally follow through on her promise to reform. *See id.*

[¶ 25] We conclude the juvenile court's finding that there was clear and convincing evidence that the conditions and causes of deprivation were likely to continue was not clearly erroneous.

## C

[¶ 26] Termination of parental rights next requires the juvenile court to find "the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm." N.D.C.C. § 27–20–44(1)(b)(1). The juvenile court, in its September 20, 2006, findings of fact and order terminating parental rights, found the "children are suffering and/or will probably suffer serious physical, mental, or emotional harm." The juvenile court further found:

    a. These children have already been harmed; are suffering academically, emotionally, and socially; and need counseling.

    b. [Irene] has done nothing to remedy the situation. Although she has obtained full time employment, it has not been used in any way to facilitate her involvement in her children's lives. [Irene] testified that she is not able now to receive the children because she has no place of her own to live. She indicates she has problems finding a place due to her rental history.

    c. This case history of repeated deprivation, protracted periods of failure to take advantage of services designed to ameliorate the situation, and the several instances indicating the intent to abandon the children, all militate to produce the conclusion that the deprivation and suffering would likely continue if these children were returned to or left in the care, custody, and control of [Irene].

Irene does not argue the juvenile court's finding that the children are suffering and probably will suffer serious physical, mental, or emotional harm was clearly erroneous. Nevertheless, the record supports the juvenile court's finding.

[¶ 27] We conclude the juvenile court did not err in finding the three elements to terminate parental rights under N.D.C.C. § 27–20–44(1)(b) had been proven by clear and convincing evidence.

## III

[¶ 28] The juvenile court's judgment is affirmed.

[¶ 29] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, DALE V. SANDSTROM, and DANIEL J. CROTHERS, JJ., concur.