736 N.W.2d 451 (2007)
2007 ND 111
In the Interest of J.C., a child.
Jeanette Wetch, LSW, Cass County Social Services, Petitioner and Appellee,
v.
Z.C., Respondent and Appellant and
J.C. and F.C., Respondents.
No. 20060341.
Supreme Court of North Dakota.
July 25, 2007.
*452 Constance Louise Cleveland (argued), Assistant State's Attorney, Fargo, N.D., for petitioner and appellee.
Dennis D. Fisher (submitted on brief), Fargo, N.D., for respondent and appellant.
KAPSNER, Justice.
[¶ 1] Z.C. appeals from a juvenile court order finding her in default for failing to appear at a hearing to terminate her parental rights and terminating her parental rights to J.C. We hold the juvenile court did not abuse its discretion in denying Z.C.'s motion for a continuance, but erred in terminating her parental rights without hearing any evidence to support the termination. We reverse the order terminating Z.C.'s parental rights and remand.

I
[¶ 2] In June 2006, a social worker for Cass County Social Services filed a petition for the termination of Z.C.'s parental rights to her 11-year-old son, J.C. The petition alleged the juvenile court had found J.C. to be a deprived child in October 2004, and placed him in the custody of Cass County Social Services. The petition also alleged that numerous services had been offered to Z.C.'s family since 1996 and Z.C. had entered into a family preservation treatment plan in October 2004, but her compliance with the plan had been *453 "minimal" and her "behaviors alarming"; that an August 2004, family assessment report stated Z.C. believed social services was involved in a conspiracy to remove her child from her care; that in January 2005, Z.C. was found guilty of child abuse or neglect and ordered to comply with social services' recommendations; that at a scheduled February 2005, permanency planning meeting, Z.C.'s "behavior was inappropriate and out of control"; that in February 2005, Z.C. was notified that her visitation hours would be changed based upon her behavior and safety concerns and Z.C. did not attempt to schedule a meeting to discuss visitation and has not participated in visitation since February 2005; that Z.C. completed a psychological and parental capacity evaluation in April 2005, which resulted in a conclusion that her behavior would continue over the next several years; that Z.C. had failed to make sufficient progress towards reunification with J.C.; that J.C. had been diagnosed with "depressive disorder NOS," "attention deficit disorder," "enursis is nocturnal/encopresis improved," "history of selective mutism," and "problems with primary support group/sibling relationship problems"; that in May 2005, Z.C. admitted the aims and goals of a previous order had not been met and the order was extended for four months; that in August 2005, Z.C. displayed signs of paranoia; that by August 2005, Z.C. had made no progress in therapy, was unwilling to accept responsibility for her children being in foster care, and had missed one appointment and failed to reschedule; and that in March 2006, the juvenile court ordered that social services need not make further reasonable efforts under N.D.C.C. § 27-20-32.2. to reunite Z.C. and J.C.
[¶ 3] Z.C. answered the petition with a pro se "motion to put the true facts as have been testified to repeatedly." Counsel was appointed to represent Z.C., and on August 14, 2006, Z.C. was mailed an order setting September 29, 2006, as the date for the trial on the petition. Z.C. failed to appear at the scheduled September 29, 2006, trial, and her court-appointed counsel moved for a seven to ten day continuance for appointment of new counsel and asked to be discharged as counsel, explaining that Z.C. "qualified her appearance today on activities of which contradict what I believe theas an officer of the Court, court-appointed to represent her, that I don't think I could have as a legal and ethical issue." Z.C.'s counsel also informed the court that he had told Z.C. that he "could not guarantee a continuance" and "her absence would be at her own peril."
[¶ 4] A juvenile court referee denied Z.C.'s motion for a continuance and found her in default, stating:
This matter, in a deprivation format, has already been going on for two years. There have been numerous court appearances. I don't mean anything derogatory to [Z.C.] by my observation that every attorney knows that various clients present greater or lesser challenges. [Z.C.] is a challenging client, based upon the fact that, I believe [counsel] is, by my knowledge, at least the fourth attorney assigned in the course of these proceedings. In general and specific to this file, I know of nothing to indicate that [counsel] has provided ineffective assistance. And whether that is subsequently alleged is something we can't control today.
One of the issues, there has been a determination of deprivation here. So one of the issues that the Court is to consider, is whether that deprivation is likely to continue. In other words, providing some sort of finality is one of the fundamental purposes of a termination of parental rights petition.

*454 The time frame here isn't seven to ten days, but more likely seven to ten weeks if we don't make some sort of resolution today. Because if I did continue the matter for appointment of new counsel, that appointment may take seven to ten days, but whomever may be appointed, then needs to learn the extensive history and become familiar with the client. And then we have to deal with the scheduling of witnesses, the scheduling of the various attorneys, the scheduling of the time for the Court. Realistically, I think we are seven to ten weeks away. And there is no indication that whatever issues gave rise to the absence of [Z.C.] today would be different in seven to ten weeks.
I've read the allegations in the Petition, which among other things, allege a lack of progress in the issues that bring us here today. The bottom line is the best interest of this child, and I don't believe the best interests of the child are served by a continuance, nor do I believe a continuance would substantially improve the ability of [Z.C.] to present a case. . . .
The court finds [Z.C.] to be in default.
Later at that hearing, J.C.'s father, with counsel, consented to termination of his parental rights. The juvenile court referee thereafter terminated both parents' parental rights to J.C.

II
[¶ 5] Z.C. argues the juvenile court abused its discretion in denying her motion for a continuance to allow appointment of new counsel. Z.C. asserts even if the continuance would have been longer than seven to ten days due to calendaring and scheduling matters, the juvenile court abused its discretion in denying her motion because this proceeding involved the termination of her parental rights.
[¶ 6] In In re A.S., 2007 ND 83, ¶ 6, 733 N.W.2d 232 (citations omitted), we recently said:
The juvenile court's decision to grant or deny a motion for continuance will not be reversed on appeal unless there was an abuse of discretion. There is an abuse of discretion when the juvenile court acts unreasonably, arbitrarily, or unconscionably. This Court looks to the particular facts and circumstances of each case when reviewing the juvenile court's decision on a motion for continuance because there is not a mechanical test to determine whether the juvenile court abused its discretion.
[¶ 7] This record reflects that on July 31, 2006, Z.C. appeared at a pre-trial hearing on the petition, on August 14, 2006, Z.C. was mailed an order setting September 29, 2006, as the date for trial on the termination petition, and there was no further action by Z.C. until the day of the scheduled trial. Z.C.'s June 2006, application for court-appointed counsel further reflects she indicated she had had at least two previous court-appointed attorneys removed from the proceedings culminating in this case. In its oral decision denying Z.C.'s request for a continuance, the juvenile court referee said Z.C.'s current court-appointed counsel was "at least the fourth attorney assigned in the course of these proceedings." Indigents have no right to court-appointed counsel of their choice. See State v. Lang, 463 N.W.2d 648, 650 (N.D.1990) (criminal proceeding); Interest of J.B., 410 N.W.2d 530, 532 (N.D. 1987) (civil commitment proceeding). On this record, we conclude the juvenile court referee's decision to deny Z.C.'s request for a continuance was not unreasonable, arbitrary, or unconscionable and was not an abuse of discretion.

*455 III
[¶ 8] Z.C. argues the juvenile court referee erred in deciding she was in default and terminating her parental rights without hearing any evidence to support the allegations in the petition. She claims the court relied upon the allegations in the petition and asserts pleadings are not proof. The State responds that the procedural history of this case cannot be viewed in a vacuum and the evidence clearly and convincingly supported the three requirements for termination under N.D.C.C. § 27-20-44(1)(b)(1). The State also argues termination can be sustained under N.D.C.C. § 27-20-44(1)(b)(2), because the child has been out of the parental home for 450 of the previous 660 nights.
[¶ 9] Under N.D.C.C. § 27-20-44(1)(b)(1), a juvenile court may terminate parental rights if the State establishes by clear and convincing evidence: (1) the child is deprived; (2) the causes and conditions of that deprivation are likely to continue; and (3) the child is suffering, or is likely to suffer, serious physical, mental, moral, or emotional harm. In re D.M., 2007 ND 62, ¶ 7, 730 N.W.2d 604. A deprived child is a child "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health . . . and the deprivation is not due primarily to the lack of financial means of the child's parents." N.D.C.C. § 27-20-02(8)(a). We have defined "proper parental care" as the minimum standards of care the community will tolerate. D.M., at ¶ 8. In order to show the conditions and causes of deprivation are likely to continue, or will not be remedied, the State cannot rely on past deprivation alone, but must provide prognostic evidence that the deprivation will continue. Id. at ¶ 11. The State may also use prognostic evidence to show the child is suffering, or will probably suffer, serious physical, mental, moral, or emotional harm. Id. at ¶ 25. We have said that in parental termination proceedings, due process and notice requirements prohibit a juvenile court from taking judicial notice of testimony in proceedings where termination is not an issue, but where termination is a culmination of prior proceedings the court need not operate in a vacuum regarding the results of those proceedings and may take judicial notice of orders in prior proceedings. See In re T.T., 2004 ND 138, ¶ 12, 681 N.W.2d 779; In re K.S., 2002 ND 164, ¶ 9, 652 N.W.2d 341.
[¶ 10] Under N.D.C.C. § 27-20-44(1)(b)(2), a juvenile court also may terminate parental rights if the child is deprived and in foster care or in the control, care, and custody of the state for 450 of the previous 660 nights. In re F.F., 2006 ND 47, ¶ 18, 711 N.W.2d 144.
[¶ 11] This record essentially consists of the State's petition and Z.C.'s "motion to put the true facts as have been testified to repeatedly." This Court has broadly defined an appearance to include any response sufficient to give the other parties or their attorneys notice of an intent to contest a claim. Throndset v. Hawkenson, 532 N.W.2d 394, 397 (N.D. 1995); Hatch v. Hatch, 484 N.W.2d 283, 285 (N.D.1992); Wallwork Lease & Rental Co., Inc. v. Schermerhorn, 398 N.W.2d 127, 129-30 (N.D.1986); Federal Land Bank v. Lillehaugen, 370 N.W.2d 517, 519 (N.D. 1985). The record establishes that Z.C. had appeared in the termination proceeding and counsel had been appointed to represent her. Z.C.'s pro se answer to the petition indicates an intent to contest the State's claims. Although a juvenile court may take judicial notice of orders in prior proceedings, a party is entitled to an opportunity *456 to be heard as to the propriety of taking judicial notice. N.D.R.Ev. 201. This record does not include the record from the prior proceedings and does not establish that the procedural requirements for judicial notice were satisfied.
[¶ 12] Moreover, the record does not include any other evidentiary basis for terminating Z.C.'s parental rights under N.D.C.C. § 27-20-44(1)(b)(1) or (2). We have recognized that parents have a fundamental natural right to their children, which is of constitutional dimension, but that right is not absolute nor unconditional. E.g., State v. Ehli, 2003 ND 133, ¶ 7, 667 N.W.2d 635. In parental termination proceedings, due process requires clear and convincing evidence before parental rights may be terminated. Santosky v. Kramer, 455 U.S. 745, 769, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); In Interest of V.J.R., 387 N.W.2d 499, 501-02 (N.D.1986). Parents do not have a constitutional due process right to appear at proceedings to terminate their parental rights, and their due process rights are satisfied if they are represented by counsel and have an opportunity to appear by deposition or other discovery technique. Adoption of S.A.L., 2002 ND 178, ¶ 10, 652 N.W.2d 912; Adoption of J.M.H., 1997 ND 99, ¶ 18, 564 N.W.2d 623.
[¶ 13] Although this Court has not yet adopted specific procedural rules for juvenile proceedings,[1] in other contexts our procedures for default against parties who have appeared require sufficient proof to enable a court to determine and grant the relief, if any, to which the plaintiff may be entitled. See N.D.R.Civ.P. 55(a)(2). Minnesota has implemented rules for defaulting parties in termination proceedings, which authorize the court to receive evidence in support of the petition or reschedule the hearing, and if the petition is proved by the applicable standard of proof, the court may enter an order granting the relief sought. Minn.R.Juv.Prot.P. 18.01 and 18.02.
[¶ 14] Here, there was no evidentiary basis for termination presented to the juvenile court referee, and we conclude the court erred in treating this proceeding as a default and terminating Z.C.'s parental rights without any evidentiary support in the record to meet the requirements for termination under N.D.C.C. § 27-20-44(1)(b)(1) or (2). We reverse the order terminating Z.C.'s parental rights and remand for proceedings consistent with this opinion. We further direct the juvenile court to hold a hearing within 30 days after the mandate in this case.

IV
[¶ 15] We reverse and remand.
[¶ 16] MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.
VANDE WALLE, Chief Justice, concurring specially.
[¶ 17] I concur in the opinion of the Court written by Justice Kapsner. Rule 201 of the Rules of Evidence, Judicial Notice of Adjudicative Facts, applies to proceedings involving termination of parental rights. Rule 201 as well as Rules 101 and 1101 leave no doubt on that score.
[¶ 18] I write separately to note that language in some of our prior opinions may have left an impression that a less formal procedure than that set forth in *457 Rule 201 allowed the trial court to consider prior proceedings. For example, in McBeth v. J.J.H., 343 N.W.2d 355, 358 (N.D.1984), we observed that although due process prohibits a court from taking judicial notice of testimony of proceedings prior to the termination of parental rights if the parents did not receive the notice required for termination, the juvenile court does not need to operate in a vacuum as to the results of the previous proceedings. We went on to say:
At a termination hearing a trial court necessarily considers prior proceedings and the events that followed when determining if the conditions and causes of the deprivation are likely to continue or will not be remedied, one of the elements to be established in terminating parental rights.
Similar language may be found in other cases and to the extent such language misled trial judges and lawyers, the opinion in this case should remedy that misconception.
[¶ 19] Nor, as this case illustrates, is the application of Rule 201 simply a mechanistic exercise. There was a time when one trial judge heard all the proceedings leading up to termination, and the judge and the parties were well aware of what preceded the termination hearing. In some instances the records were all in one file. Today, it is not unusual for different judges to preside at different hearings with different files involving a deprived child and the judge hearing the final termination proceeding is not aware of the prior proceedings without having reviewed the prior record.
[¶ 20] More significantly, unless the trial judge takes formal notice of the prior proceedings under Rule 201, those prior proceedings will not become part of the record for review on appeal. That is what happened in this case. While on appeal the prior history of the case was argued in support of the trial court's decision, that history is not part of the record certified to us in this appeal. Rule 10(g)(2), N.D.R.App.P., authorizes this Court, on its own motion, to "direct an omission or misstatement be corrected, and, if necessary, that a supplemental record be certified and transmitted." Because it is not clear on the record before us that the trial court considered the record of prior proceedings leading to termination, I believe it would be improper to use this rule to bring the record of the prior proceedings before us.
[¶ 21] Gerald W. Vande Walle, C.J.
NOTES
[1] This Court's Juvenile Policy Board is currently considering procedural rules for juvenile proceedings. See N.D. Const. art. VI, § 3 (authorizing supreme court to promulgate rules of procedure for all courts of this state); N.D.C.C. § 27-20-57 (authorizing supreme court to adopt rules of procedure for juvenile proceedings).