# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2024 ND 9

In the Interest of J.C., minor child

| | |
|---|---|
| State of North Dakota, | Petitioner and Appellee |
| v. | |
| J.C., child, J.C., father to J.C., | Respondents |
| and | |
| T.W., mother, | Respondent and Appellant |

## No. 20230377

In the Interest of M.W., minor child

| | |
|---|---|
| State of North Dakota, | Petitioner and Appellee |
| v. | |
| M.W., child, Unknown, father to M.W., | Respondents |
| and | |
| T.W., mother, | Respondent and Appellant |

## No. 20230378

Appeal from the Juvenile Court of Ward County, North Central Judicial District, the Honorable Kelly A. Dillon, Judicial Referee.

REVERSED AND REMANDED.

Opinion of the Court by Bahr, Justice.

Rozanna C. Larson, State's Attorney, Minot, ND, for petitioner and appellee.

William R. Hartl, Rugby, ND, for respondent and appellant.

**Interest of J.C. and M.W.**
**Nos. 20230377 & 20230378**

**Bahr, Justice.**

[¶1]   T.W. appeals from a juvenile court order terminating her parental rights to J.C. and M.W. We hold the court abused its discretion when it took judicial notice of or considered evidence beyond the evidentiary record. We further hold the court erred by making clearly erroneous findings. Despite these errors, there is sufficient evidence in the record to support the court's decision to terminate T.W.'s parental rights; however, we are unable to discern whether the court abused its discretion by relying on the inadmissible evidence when it decided to terminate T.W.'s parental rights. Therefore, we retain jurisdiction under N.D.R.App.P. 35(a)(3)(B) and remand with instructions for the court to issue an order based only on the evidence received at trial.

I

[¶2]   T.W. is the mother of J.C. and M.W. The Ward County Human Services Zone placed both children into foster care on April 14, 2021. At the time of the children's removal from T.W., T.W. was in a relationship with A.W. A.W. contributed to the treatment of the children which led to their removal. Following their placement in foster care, T.W. pled guilty to three counts of child abuse. The juvenile court sentenced T.W. to ten years with 4 years to serve in custody.

[¶3]   The State filed a petition to terminate parental rights in December 2022. The juvenile court held a trial in September 2023. The court found the children had "been in foster care a total of 1123 continuous nights as of the date of the trial." The court further found T.W. is still attempting to maintain a relationship with A.W. despite a no contact order and, due to T.W.'s continued contact with A.W., the need for protection of the children is likely to continue. The court ordered the termination of T.W.'s parental rights.

1

[¶4]   "[N]atural parents have a fundamental right to their children, 'which is of a constitutional dimension.'" *In re W.E.*, 2000 ND 208, ¶ 30, 619 N.W.2d 494 (quoting *In the Interest of L.F.,* 1998 ND 129, ¶ 9, 580 N.W.2d 573). "The constitutional protections, although not absolute, require that '[a]ny doubts should be resolved in favor of the natural parent [,] and parental rights should be terminated only when necessary for the child's welfare or in the interest of public safety.'" *Id.* (quoting *L.F.,* at ¶ 9).

[¶5]   Termination of parental rights is governed by N.D.C.C. § 27-20.3-20. Under section 27-20.3-20(1)(c)(1), the court may terminate parental rights if the child is in need of protection and the court finds "[t]he conditions and causes of the need for protection are likely to continue or will not be remedied and for that reason the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm[.]" Under section 27-20.3-20(1)(c)(2), the court may terminate parental rights if the child is in need of protection and the court finds "[t]he child has been in foster care, in the care, custody, and control of the department or human service zone for at least four hundred fifty out of the previous six hundred sixty nights[.]"

[¶6]   Termination of parental rights proceedings under N.D.C.C. ch. 27-20.3 are governed by the North Dakota Rules of Juvenile Procedure and, to the extent they are not inconsistent with the Rules of Juvenile Procedure, the North Dakota Rules of Civil Procedure. N.D.R.Civ.P. 1, 81(a). The North Dakota Rules of Evidence apply to termination of parental rights proceedings. N.D.R.Ev. 101(a), 1101(a), (b).

[¶7]   "We will not overturn a juvenile court's findings of fact in a termination proceeding unless the findings are clearly erroneous under N.D.R.Civ.P. 52(a)." *In re A.B.*, 2017 ND 178, ¶ 12, 898 N.W.2d 676. "A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made." *Id.* "In reviewing findings of fact, a 'reviewing court must give due regard to the trial court's

opportunity to judge the witnesses' credibility.'" *Id.* (quoting N.D.R.Civ.P. 52(a)(6)).

## A

[¶8] Referring to the permanency hearings as "underlying files," the juvenile court wrote the underlying files "are incorporated into this matter as agreed to by the parties." T.W. asserts she did not agree to the court considering the permanency hearing files, and the State concedes the record does not reflect the parties agreed to the court considering the permanency hearing files.

[¶9] T.W. argues the juvenile court abused its discretion by taking judicial notice of and relying on the affidavits in the permanency hearings. The State responds that the affidavits were part of the juvenile court records leading up to the proceeding and that the affiants testified at the hearing. "We review a . . . court's decision to take judicial notice under an abuse of discretion standard." *Koon v. State*, 2023 ND 247, ¶ 11; *Orwig v. Orwig*, 2021 ND 33, ¶ 6, 955 N.W.2d 34.

[¶10] Under this Court's precedent, juvenile courts may examine orders in past cases:

> [I]n parental termination proceedings, due process and notice requirements prohibit a juvenile court from taking judicial notice of testimony in proceedings where termination is not an issue, but where termination is a culmination of prior proceedings the court need not operate in a vacuum regarding the results of those proceedings and may take judicial notice of orders in prior proceedings.

*In re J.C.*, 2007 ND 111, ¶ 9, 736 N.W.2d 451. However, "[t]he court may only take judicial notice of the evidence as presented, and not for the truth of the matters asserted by the evidence." *Wessman v. Wessman*, 2008 ND 62, ¶ 19, 747 N.W.2d 85 (quoting *State v. Bergstrom*, 2006 ND 45, ¶ 18, 710 N.W.2d 407).

[¶11] The juvenile court went beyond considering the orders in the permanency cases; the court's order specifically references and relies upon "affidavits in the underlying files[.]" The court's order also cites facts referred

3

to in the affidavits. Although the court was allowed to consider the orders in the permanency proceedings, it could not consider testimony, including statements in affidavits, from the permanency proceedings. *See J.C.*, 2007 ND 111, ¶ 9. The court abused its discretion by relying on the affidavits in the permanency proceedings.

## B

[¶12] The juvenile court relied on statements in an affidavit submitted in the termination proceeding. T.W. argues the court erred in doing so. The State responds that the affidavit was in the record.

[¶13] The State did not offer and the juvenile court did not receive the affidavit as evidence. An affidavit filed in a case is part of the court's file or record. However, generally an affidavit only becomes part of the evidentiary record when a party offers it and the court receives it into evidence. The court abused its discretion by relying on an affidavit the State never offered and the court never received into evidence. *In re Skorick*, 2020 ND 162, ¶ 10, 946 N.W.2d 513 (the court abused its discretion when it considered an expert report the State did not offer into evidence at the commitment hearing); *Wetzel v. Schlenvogt*, 2005 ND 190, ¶ 23, 705 N.W.2d 836 (petitions for protective orders and affidavits are inadmissible hearsay under N.D.R.Ev. 801(c)).

## C

[¶14] The juvenile court's order references and quotes the guardian ad litem's reports. T.W. argues the juvenile court erred and abused its discretion when it considered the guardian ad litem's reports. She explains the guardian ad litem did not testify regarding all of the content of her reports and the State did not introduce the reports into evidence. The State responds the guardian ad litem's reports were part of the juvenile court record.

[¶15] As previously noted, there is a distinction between the court file or record and the evidentiary record. Generally, a document in the court file is not part of the evidentiary record unless a party offers the document and the court receives it. *See Skorick*, 2020 ND 162, ¶ 10.

[¶16] The State provides no authority for the proposition a juvenile court may consider a guardian ad litem's report as substantive evidence despite the State not offering the report into evidence. "One of the fundamental precepts of our judicial system is that the finder of fact must rely only on the evidence presented in court." *Green v. Green*, 1999 ND 86, ¶ 10, 593 N.W.2d 398 (holding the court committed reversible error when it relied on evidentiary facts in a guardian ad litem's report not introduced into evidence). The juvenile court abused its discretion by relying on the guardian ad litem's reports the State never offered and the court never received into evidence.

[¶17] We conclude the juvenile court abused its discretion when it took judicial notice of or relied on statements in affidavits from the permanency proceedings, statements in an affidavit filed in the termination proceeding, and the guardian ad litem's reports, none of which the State offered as evidence or the court received into evidence at trial. Based on those conclusions, we determine the court's findings of fact grounded solely on those documents are clearly erroneous because they are not supported by evidence in the record.

III

[¶18] T.W. argues the juvenile court's finding the children were in foster care a total of 1123 continuous nights is clearly erroneous. The State concedes the court erred when it found the children were in foster care for 1123 nights.

[¶19] The parties agree, and the record shows, the children were in foster care for 877 nights. We conclude the juvenile court's finding on the number of nights the children were in foster care is clearly erroneous.

IV

[¶20] T.W. argues the juvenile court erred when it found the conditions and causes of the need for protection are likely to continue. "[T]o show the conditions and causes of [the need for protection] are likely to continue, or will not be remedied, the State cannot rely on past [need for protection] alone, but must provide prognostic evidence that the [need for protection] will continue." *J.C.*, 2007 ND 111, ¶ 9.

[¶21] The juvenile court's finding the conditions and causes of the need for protection are likely to continue is based on evidence presented at trial. The court found T.W. cannot, or will not, extricate herself from A.W.; T.W. has continued to maintain contact with A.W., "her children's abuser[,] despite being reminded repeatedly by multiple people of the no contact order and of the trauma her children suffered at the hands of their abuser"; and T.W. continues to put her needs and desires before the needs of her children. We conclude the court's finding the conditions and causes of the need for protection are likely to continue is not clearly erroneous.

V

[¶22] Under N.D.C.C. § 27-20.3-20(1), the juvenile court "may" terminate parental rights if the elements have been met. "When used in a statute, the word 'may' is ordinarily understood as permissive rather than mandatory and operates to confer discretion." *In re C.A.R.*, 2020 ND 209, ¶ 9, 950 N.W.2d 186. Therefore, when the statutory elements to terminate parental rights are met, the court has discretion, but is not required, to terminate parental rights. *In re J.J.G.*, 2022 ND 236, ¶ 9, 982 N.W.2d 851; *In re C.D.G.E.*, 2017 ND 13, ¶ 4, 889 N.W.2d 863. The court's discretion to terminate parental rights is not unlimited. *See J.J.G.*, at ¶ 9. We review a court's exercise of its discretion to grant or deny a parental-termination petition under the abuse of discretion standard. *C.D.G.E.*, at ¶ 9. A court "abuses its discretion if it acts in an arbitrary, unconscionable, or unreasonable manner, if its decision is not the product of a rational mental process leading to a reasonable determination, or if it misinterprets or misapplies the law." *Id.* (quoting *Anderson v. Baker*, 2015 ND 269, ¶ 7, 871 N.W.2d 830).

[¶23] T.W. does not challenge the juvenile court's finding the children are in need of protection. We concluded the court's finding the conditions and causes of the need for protection are likely to continue is not clearly erroneous. Thus, the elements to terminate T.W.'s parental rights under N.D.C.C. § 27-20.3-20(1)(c)(1) are met.

[¶24] The juvenile court improperly found the children were in foster care for 1123 nights, when they were actually in foster care for 877 nights. However,

because the children were in foster care beyond 450 nights, the elements to terminate T.W.'s parental rights under N.D.C.C. § 27-20.3-20(1)(c)(2) are met.

[¶25] The juvenile court had discretion to terminate T.W.'s parental rights under N.D.C.C. § 27-20.3-20(1)(c)(1) or (2). However, when exercising its discretion, the court improperly considered evidence outside of the evidentiary record and a clearly erroneous finding the children were in foster care for 1123 nights. The court abused its discretion in relying on that evidence. We cannot determine what impact, if any, the improperly considered evidence and erroneous findings had on the court's exercise of its discretion.

[¶26] This Court has applied N.D.R.Civ.P. 61 in termination proceedings. *In re Adoption of K.J.C.*, 2016 ND 67, ¶ 27, 877 N.W.2d 62; *In re J.S.L.*, 2009 ND 43, ¶ 25, 763 N.W.2d 783; *In re Adoption of J.D.F.*, 2009 ND 21, ¶ 22, 761 N.W.2d 582; *B.L.L. v. W.D.C.*, 2008 ND 107, ¶ 7, 750 N.W.2d 466; *In re K.S.*, 2002 ND 164, ¶ 11, 652 N.W.2d 341. Under Rule 61, "[e]rror not affecting substantial rights of the parties must be disregarded." *K.S.*, at ¶ 11. "Nonprejudicial mistakes by the lower court constitute harmless error and are not grounds for reversal." *Id.* We have also explained:

> Entry of incompetent evidence in a nonjury trial will rarely be reversible error while exclusion of competent evidence will cause reversal when justice requires. We presume a court in a bench trial considered only competent evidence. Consequently, it is not reversible error to admit incompetent evidence in a bench trial unless it induced an improper finding.

*In re R.L.-P.*, 2014 ND 28, ¶ 37, 842 N.W.2d 889 (quoting *McKechnie v. Berg*, 2003 ND 136, ¶ 7, 667 N.W.2d 628). The incompetent evidence received by the juvenile court did induce improper findings. However, we cannot determine what impact, if any, the improper findings had on the court's exercise of its discretion.

[¶27] As previously noted, there is competent evidence to support the juvenile court's findings it had grounds to terminate T.W.'s parental rights. The issue is one of discretion. The juvenile court has discretion to terminate parental rights. However, it must exercise that discretion based on admissible evidence.

7

Thus, we remand to the juvenile court with instructions to, based on the admissible evidence, exercise its discretion whether to terminate T.W.'s parental rights.

## VI

[¶28] We have considered the parties' other arguments and conclude they are not necessary to our decision or are without merit. We retain jurisdiction under N.D.R.App.P. 35(a)(3)(B) and remand to the juvenile court with instructions that, within twenty days from the filing of this opinion, the court issue an order based only on the evidence received at trial.

[¶29] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr