# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 127

In the Interest of B.F., a Child

Sarah Boyer, Cass County
Human Service Zone,                                     Petitioner and Appellee

     v.

B.F., a child; A.F., father,                                             Respondents

     and

C.C., mother,                                          Respondent and Appellant

## No. 20250159

In the Interest of I.F., a Child

Sarah Boyer, Cass County
Human Service Zone,                                     Petitioner and Appellee

     v.

I.F., a child; A.F., father,                                             Respondents

     and

C.C., mother,                                          Respondent and Appellant

## No. 20250160

Appeal from the Juvenile Court of Cass County, East Central Judicial District, the Honorable Ryan Younggren, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Diane K. Davies-Luger, Assistant State's Attorney, Fargo, N.D., for petitioner and appellee; submitted on brief.

Kylie M. Oversen, Fargo, N.D., for respondent and appellant; submitted on brief.

**Tufte, Justice.**

[¶1]   C.C. appeals from a juvenile court order terminating her parental rights to B.F. and I.F. On appeal, C.C. argues: (1) the juvenile court erred by finding her in default and terminating her parental rights; (2) the juvenile court abused its discretion by denying her motion to vacate the default judgment; and (3) the default judgment terminating her parental rights violates her constitutional due process rights. We affirm the juvenile court order.

I

[¶2]   C.C. is the mother of B.F. and I.F. ("the children"). In November 2021, C.C. left the children in the care of their paternal uncle, who has since provided the children with a stable home.

[¶3]   In November 2022, B.F. and I.F. came under the protective custody of the Cass County Human Service Zone (CHSZ) due to concerns of parental abandonment. The whereabouts of A.F., the father of B.F. and I.F., were unknown to CHSZ at the time it filed the petition to terminate his and C.C.'s parental rights to the children. In March 2023, the juvenile court: (1) adjudicated B.F. and I.F. children in need of protection and placed them into the custody of CHSZ for a period of nine months; (2) found that the children were subjected to aggravating factors under N.D.C.C. § 27-20.3-01.3; and (3) adopted a permanency plan of reunification. In December 2023, CHSZ filed a petition to terminate C.C.'s parental rights, but due to C.C.'s progress on the reunification plan, CHSZ later amended the requested disposition to nine months of continued care, custody, and control with CHSZ. In February 2024, the juvenile court granted CHSZ custody of the children for an additional nine months, adopting concurrent permanency plans of reunification and termination of parental rights.

[¶4]   In October 2024, CHSZ again petitioned the court to terminate C.C. and A.F.'s parental rights, arguing C.C. had failed to maintain progress on the reunification plan. In her affidavit accompanying the petition, CHSZ case manager Sara Boyer stated that C.C. "has failed to adequately address the

barriers to reunification." C.C. "has failed to maintain open channels of communication making it challenging to keep her informed of important information relating to her children. [C.C.]'s inability to remain consistently available has made it difficult to contact her and coordinate parenting time, meetings and appointments."

[¶5]   Boyer stated that from February 2024, when the juvenile court adopted the most recent permanency plan, until October 2024, when CHSZ petitioned the court to terminate C.C.'s parental rights, C.C. demonstrated patterns of unreliability and unresponsiveness as well as a general lack of progress toward reunification. C.C. "continue[d] to demonstrate inconsistency in her attendance to scheduled parenting time. [She was] often late to visitations, stating she lost track of time, didn't have a way to communicate, forgot she had an appointment." C.C.'s lack of consistency with parenting time had a negative impact on the children. Beyond her inconsistency with parenting time, C.C. failed to make other meaningful progress toward reunification. C.C. "fail[ed] to engage with services, utilize resources supplied to her, or follow through with services and resources supplied to her by case managers and parent aid." C.C. failed to secure stable housing and employment, nor did she attend therapy sessions for her mental health and addiction issues.

[¶6]   In October 2024, C.C. attended the initial hearing on CHSZ's petition and requested the court appoint her counsel. The court appointed C.C. counsel, and both C.C. and her counsel attended a status conference on December 17, 2024. A.F., who was incarcerated throughout the pendency of these proceedings, appeared via Zoom. At that status conference, the court postponed trial until February 20, 2025, and scheduled a status conference for February 11, 2025.

[¶7]   Both C.C. and A.F. failed to attend the February 11 status conference, although their attorneys did appear; C.C.'s care coordinator also appeared. C.C.'s counsel stated that she had not had any contact with C.C. since the prior status conference. CHSZ moved the court to find C.C. and A.F. in default and offered Boyer's testimony and affidavit into evidence. C.C. and A.F.'s attorneys did not object to CHSZ's motion for default nor to entry of Boyer's affidavit into evidence, but C.C.'s counsel did cross-examine Boyer. Boyer testified that

although C.C. had recently missed a visitation, she had otherwise attended most of the most recent parenting time appointments. The court found C.C. and A.F. in default and terminated their parental rights to the children.

[¶8]  In its findings of fact and order terminating parental rights, the court found that B.F. and I.F. continue to be children in need of protection who "have been subjected to Aggravated Circumstances as defined in N.D.C.C. § 27-20.3-01(3)," including that "[C.C.] has failed to make substantial, meaningful efforts to secure treatment for her addiction, mental illness, behavior disorder or any combination of those conditions for a period of one year." The court found that: (1) C.C. continues to use and possess drugs; (2) C.C. has failed to secure stable housing and employment; (3) "[C.C.] has failed to prioritize the well-being of her children by failing to participate reliably in visitation and meetings and appointments involving the welfare of her children;" and (4) the children have been in the care of CHSZ since November 7, 2022, which exceeds the statutory threshold of 450 out of the previous 660 nights under N.D.C.C. § 27-20.3-20(1)(c)(2).

[¶9]  Three days after the juvenile court granted CHSZ's motion for default, C.C. moved the court, pursuant to N.D.R.Civ.P. 60, to vacate the default judgment. The court denied C.C.'s motion. Under N.D. Sup. Ct. Admin. R. 13, § 11, C.C. requested review by a district judge of the judicial referee's: (1) findings and order terminating parental rights; and (2) order denying C.C.'s motion to vacate default judgment. The district judge adopted the judicial referee's findings and order terminating C.C.'s parental rights.

II

[¶10] On appeal, C.C. argues: (1) the juvenile court erred when it found her in default and terminated her parental rights; (2) the juvenile court abused its discretion by denying her motion to vacate default judgment; and (3) the default judgment terminating her parental rights violates her constitutional due process rights.

3

A

[¶11] Section 27-20.3-20, N.D.C.C., authorizes a juvenile court to terminate parental rights:

1. The court by order may terminate the parental rights of a parent with respect to the parent's child if:
   a. The parent has abandoned the child;
   b. The child is subjected to aggravated circumstances;
   c. The child is in need of protection and the court finds:
      (1) The conditions and causes of the need for protection are likely to continue or will not be remedied and for that reason the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm; or
      (2) The child has been in foster care, in the care, custody, and control of the department or human service zone for at least four hundred fifty out of the previous six hundred sixty nights; [ . . . ]

N.D.C.C. § 27-20.3-20(1). "The party seeking termination of parental rights must prove all elements by clear and convincing evidence. Clear and convincing evidence is evidence that leads to a firm belief or conviction the allegations are true." *In re A.P.*, 2024 ND 43, ¶ 12, 4 N.W.3d 232 (citations omitted) (cleaned up).

[¶12] Whether the statutory elements of N.D.C.C. § 27-20.3-20(1) are met is a question of fact, and "that decision will not be overturned unless it is clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, no evidence exists to support it, or if it is clear a mistake has been made." *Id.*

[¶13] "[W]hen the statutory elements to terminate parental rights are met, the court has discretion, but is not required, to terminate parental rights." *In re J.C.*, 2024 ND 9, ¶ 22, 2 N.W.3d 228. This Court reviews a juvenile court's exercise of its discretion to terminate parental rights under N.D.C.C. § 27-20.3-20(1) for an abuse of discretion. *Id.* "A court abuses its discretion if it acts in an arbitrary, unconscionable, or unreasonable manner, if its decision is not the product of a rational mental process leading to a reasonable determination, or if it misinterprets or misapplies the law." *Id.*

4

[¶14] "Termination of parental rights proceedings under N.D.C.C. ch. 27-20.3 are governed by the North Dakota Rules of Juvenile Procedure and, to the extent they are not inconsistent with the Rules of Juvenile Procedure, the North Dakota Rules of Civil Procedure. N.D.R.Civ.P. 1, 81(a)." *Id.* ¶ 6.

B

[¶15] C.C. argues the juvenile court erred when it found her in default. Under N.D.R.Juv.P. 10:

> (a) Presence.
> [ . . . ]
> > (3) *Parent, Guardian or Custodian.* Except in a continued foster care matter under N.D.C.C. § 27-20.3-16, the parent, guardian or custodian of a child must be present at all hearings unless excused by the court. If such person fails to attend a hearing with the child without excuse, the court may order a law enforcement officer to take the person into custody and bring the person before the court. The court may hold the person in contempt. The court may proceed if it is in the best interests of the child to do so even if the parent, guardian, or custodian fails to appear.
> (b) Default.
> > (1) If after being properly served with a summons or notice a parent, guardian or custodian fails to appear at a hearing, the court may receive evidence in support of the petition or reschedule the hearing.
> > (2) If the petition is proved by the applicable burden of proof, the court may enter an order granting the relief sought in the petition.

N.D.R.Juv.P. 10.

[¶16] C.C. failed to appear at the February 11 status conference, despite having been properly notified of the hearing. In that situation, "[t]he juvenile court may receive evidence in support of a petition for default, and it may declare default on a party who has failed to appear." *In re M.R.*, 2015 ND 233, ¶ 7, 870 N.W.2d 175 (citing N.D.R.Juv.P. 10(b)). Under the plain language of N.D.R.Juv.P. 10, the

juvenile court had discretion to proceed and receive evidence in support of CHSZ's petition and thus did not err by doing so. N.D.R.Juv.P. 10(b)(1).

C

[¶17] C.C. argues that "simply admitting an affidavit into evidence, with an affirmation by the Petitioner, is not 'clear and convincing evidence' required by state law to support a termination of parental rights." C.C. cites no authority for the proposition that a court may not rely in its findings on an affidavit it properly received into evidence.

[¶18] A factfinder may rely on an affidavit if it is properly offered and received into the evidentiary record:

> An affidavit filed in a case is part of the court's file or record. However, generally an affidavit only becomes part of the evidentiary record when a party offers it and the court receives it into evidence. There is a distinction between the court file or record and the evidentiary record. Generally, a document in the court file is not part of the evidentiary record unless a party offers the document and the court receives it. Therefore, [a] court abuse[s] its discretion by relying on an affidavit the State never offered and the court never received into evidence.

*In re A.P.*, 2024 ND 43, ¶ 17 (cleaned up).

[¶19] CHSZ moved the juvenile court to find C.C. in default and offered Boyer's testimony and affidavit into evidence. C.C.'s attorney stated, "No objection to the affidavit," and the court accepted Boyer's affidavit into the evidentiary record. The court did not err by relying in its findings on an affidavit it had properly received into evidence.

[¶20] Because the evidentiary record supports the juvenile court's findings that the children are children in need of protection and have been in the care, custody, and control of CHSZ for at least 450 out of the previous 660 nights, those findings are not clearly erroneous. These findings—that the children have been in the care, custody, and control of CHSZ for at least 450 out of the previous 660 nights and that they are children are in need of protection—are sufficient to terminate

6

parental rights under N.D.C.C. § 27-20.3-20(1)(c)(2), and from our review of the record, we conclude the court did not abuse its discretion in terminating C.C.'s parental rights. *In re R.L.-P.*, 2014 ND 28, ¶ 23, 842 N.W.2d 889. We affirm the juvenile court's order terminating C.C.'s parental rights.

III

[¶21] C.C. argues the juvenile court abused its discretion in denying her motion to vacate the default judgment terminating her parental rights. A threshold issue is that C.C.'s motion to vacate was briefed and decided under N.D.R.Civ.P. 60(b), which is the incorrect standard. N.D.R.Juv.P. 16 applies to motions to vacate in termination of parental rights proceedings under N.D.C.C. ch. 27-20.3. N.D.R.Juv.P. 1; *In re J.C.*, 2024 ND 9, ¶ 6 (citing N.D.R.Civ.P. 1, 81(a)). Although the juvenile court applied the incorrect standard, we affirm its denial of C.C.'s motion to vacate default judgment, because the result is the same under the correct N.D.R.Juv.P. 16 standard.

A

[¶22] "Termination of parental rights proceedings under N.D.C.C. ch. 27-20.3 are governed by the North Dakota Rules of Juvenile Procedure and, to the extent they are not inconsistent with the Rules of Juvenile Procedure, the North Dakota Rules of Civil Procedure." *In re J.C.*, 2024 ND 9, ¶ 6 (citing N.D.R.Civ.P. 1, 81(a)). "The North Dakota Rules of Evidence apply to termination of parental rights proceedings." *Id.* (citing N.D.R.Ev. 101(a), 1101(a), (b)).

[¶23] The Rules of Juvenile Procedure "must be construed and administered to protect the best interests of children and to address the unique characteristics and needs of children." N.D.R.Juv.P. 1. When interpreting a court rule, we apply principles of statutory construction. *In re A.P.*, 2023 ND 39, ¶ 10, 987 N.W.2d 345. We look first at the language of the rule and apply each word's plain, ordinary, and commonly understood meaning. *Id.*

[¶24] Rule 16, N.D.R.Juv.P. provides:

> (a) Mandatory Vacation of Order. An order of the court must be set aside if:

(1) it appears it was obtained by fraud or mistake;

(2) the court lacked jurisdiction over a necessary party or of the subject matter; or

(3) newly discovered evidence so requires.

(b) Discretionary Modification.

(1) Except an order terminating parental rights, or an order of dismissal, an order of the court may also be changed, modified, or vacated on the ground that changed circumstances so require in the best interest of the child.

(2) An order terminating parental rights and the parent and child relationship may be vacated by the court on motion of the parent if the child is not placed for adoption and the person having custody of the child consents in writing to the vacation of the decree.

(3) An order granting probation to a child found to be delinquent may be reviewed on the ground that the conditions of probation have not been observed.

(c) Motion for Relief. Any party to the proceeding, the director of juvenile court or other person having supervision or legal custody of or an interest in the child may move the court for the relief provided in this rule. The motion must set forth in concise language the grounds on which relief is requested.

(d) Notice. Reasonable notice and an opportunity to be heard must be given to the child and the parent, guardian, or other custodian before the court may extend the duration of:

(1) an order committing a delinquent child to the division of juvenile services;

(2) an order placing a child in foster care; or

(3) an order placing a child in detention or protective care.

(e) Hearing. After the motion is filed, the court must grant a request for a hearing and require notice to be served on the parties. After the hearing, which may be informal, the court may deny or grant relief as the evidence warrants.

N.D.R.Juv.P. 16. This Court has not addressed how the standard for motions to vacate under N.D.R.Juv.P. 16 differs from the standard for motions to vacate under N.D.R.Civ.P. 60(b). We have indicated, however, that "this Court's inclusion of the 'Uniform Juvenile Court Act' on Table A to Civil Rule 81(a) means Civil Rule 60 no longer applies to juvenile court proceedings." *In re G.K.G.*, 2014 ND 82, ¶ 26, 846 N.W.2d 473 (Crothers, J., specially concurring).

8

[¶25] A comparison of the plain language of the two rules indicates that the standards are not identical. Rule 60(b), N.D.R.Civ.P., provides:

> (b) Grounds for Relief From a Final Judgment or Order. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

N.D.R.Civ.P. 60(b). We review the denial of a motion to vacate under N.D.R.Civ.P. 60(b) for an abuse of discretion. *Discover Bank v. Bolinske*, 2020 ND 228, ¶ 10, 950 N.W.2d 417. Rule 16, N.D.R.Juv.P., provides for both mandatory and discretionary modification of orders. N.D.R.Juv.P. 16(a), (b). We review a court's exercise of its discretion under N.D.R.Juv.P. 16(b) for an abuse of discretion.

B

[¶26] C.C. moved the juvenile court to vacate the default judgment "based on excusable neglect, fraud, misrepresentation, and any other reason that justifies relief therefrom," which are bases for relief under N.D.R.Civ.P. 60(b)(1), (3), and (6). In her brief in support of her motion, C.C. explained that "she intended to participate in the hearing on February 11, however she missed her ride to the courthouse and was unable to get there on time. She indicated she was getting ready and did not hear anyone at her door." CHSZ opposed the motion, arguing that C.C. could not meet her burden under N.D.R.Civ.P. 60(b) or N.D.R.Juv.P. 16(b). The juvenile court denied C.C.'s motion, concluding:

9

1. Under N.D.R.Civ.P. 60(b), a default judgment may only be vacated upon a showing of mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, fraud, or other justifiable reason.

2. [C.C.] has not demonstrated excusable neglect or any other legally sufficient reason to vacate the default judgment.

3. The Due Process Clause of the 14th Amendment protects a parent's fundamental right to the care, custody, and control of their children. However, that right is not absolute and is subject to the child's best interests.

4. Given [C.C.]'s history of noncompliance, failure to take appropriate steps to attend the hearing, and lack of progress toward reunification, the Court finds that vacating the default judgment is not warranted.

5. The best interests of the children require stability and permanency, which would be unnecessarily delayed if the motion were granted.

[¶27] Although C.C.'s motion to vacate the default judgment should not have been adjudicated under N.D.R.Civ.P. 60(b), we affirm, because the result is the same under the correct N.D.R.Juv.P. 16(b)(2) standard. None of the circumstances requiring vacation of judgment under N.D.R.Juv.P. 16(a) are present in this case. On this record, the court's finding that C.C.'s failure to appear was not due to fraud or mistake is not clearly erroneous. C.C. did not argue the court lacked jurisdiction or assert newly discovered evidence under N.D.R.Juv.P. 16(a)(2) or (3). C.C.'s potential recourse is thus limited to the juvenile court's discretion under N.D.R.Juv.P. 16(b), but that discretion is narrow when the order at issue is an order terminating parental rights: "An order terminating parental rights and the parent and child relationship may be vacated by the court on motion of the parent if the child is not placed for adoption and the person having custody of the child consents in writing to the vacation of the decree." N.D.R.Juv.P. 16(b)(2).

[¶28] C.C. cannot meet her burden under N.D.R.Juv.P. 16(b)(2). Here, "the person having custody of the child[ren]"—CHSZ—petitioned to have C.C.'s

parental rights terminated, and CHSZ opposed C.C.'s motion to vacate. Further, the hearing requirement under N.D.R.Juv.P. 16(e) is satisfied, because— although "the court must grant a request for a hearing and require notice to be served on the parties"—C.C. expressly stated in her motion that she was not requesting a hearing on the motion. N.D.R.Juv.P. 16(e). Because the result would have been the same if the juvenile court had applied N.D.R.Juv.P. 16, we affirm. *Schmidt v. City of Minot*, 2016 ND 175, ¶ 16, 883 N.W.2d 909 ("We will not set aside a correct result merely because the district court's reasoning is incorrect if the result is the same under the correct law and reasoning.") (cleaned up).

IV

[¶29] C.C. argues that the default judgment terminating her parental rights violates her constitutional due process rights. Her argument is without merit.

[¶30] This Court has made clear that when a parent fails to appear at a proceeding under N.D.C.C. ch. 27-20.3, a juvenile court does not violate the parent's constitutional due process rights if it exercises its discretion to proceed under N.D.R.Juv.P. 10:

> Although parents have a fundamental right to raise their children, such a right is not absolute or unconditional. Generally, procedural due process requires fundamental fairness, which, at a minimum, necessitates notice and a meaningful opportunity for a hearing appropriate to the nature of the case. The requirements of due process are flexible and vary depending upon the circumstances of each case. However, parents do not have a constitutional due process right to appear at proceedings to terminate their parental rights, and their due process rights are satisfied if they are represented by counsel and have an opportunity to appear by deposition or other discovery technique. An individual's right to appear may be satisfied by allowing an appearance via telephone.

*In re M.R.*, 2015 ND 233, ¶ 10.

[¶31] Despite proper notice of the February 11 hearing, C.C. failed to appear, although her counsel was present. C.C. cites no authority and presents no reasoned argument for her contention that a court runs afoul of constitutional

11

due process by exercising its discretion under N.D.R.Juv.P. 10 to proceed and enter default judgment against a non-appearing party in a termination of parental rights hearing. Because we conclude that the juvenile court acted properly within its discretion under N.D.R.Juv.P. 10, we affirm.

V

[¶32] We affirm the juvenile court's order.

[¶33] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr